Maud L. Johnson v. Commissioner.
Johnson v. Commissioner
Docket No. 888-63.
United States Tax Court
T.C. Memo 1965-2; 1965 Tax Ct. Memo LEXIS 326; 24 T.C.M. (CCH) 14; T.C.M. (RIA) 65002; January 14, 1965
Maud L. Johnson, pro se. Stanton P. Sornson, for the respondent. MULRONEY Memorandum Findings of *327 Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in petitioner's income taxes for the years 1958 and 1959 in the amounts of $3,354.03 and $653.59, respectively. In addition, he determined additions to tax under section 6653(a), Internal Revenue Code of 1954[1] for the years 1958 and 1959 in the amounts of $167.70 and $32.68, respectively. Respondent's determinations of deficiencies are based upon his increasing income realized from livestock sales, and rents, and correcting errors in the returns. Petitioner, in her petition, alleged all of the deficiency determinations and additions thereto were in controversy. She also alleged in her petition in paragraph 6(f): Petitioner suffered a net operating loss in the year 1955 when 156 head of her livestock were wrongfully converted by the sheriff of Cherry County, Nebraska. She is entitled to carry said loss over through the year 1959. All of the issues raised in the pleadings were disposed of in the stipulation of facts or otherwise settled, conceded, or abandoned, with the exception *328 of the issue raised by paragraph 6(f) above. Findings of Fact Some of the facts have been stipulated and they will be found accordingly. The petitioner is a widow residing in Aline, Major County, Oklahoma. She ailed her individual income tax returns for 1958 and 1959 with the district director of internal revenue at Oklahoma City, Oklahoma. Petitioner's brother, Milton C. Kidder, is a cattle rancher operating in Cherry County near Mullen, Nebraska. His wife Pearl secured a divorce from him on January 11, 1954. The divorce decree awarded Pearl $30,000 in alimony payable in installments of $2,500 March 1, 1954 and $2,500 the first day of March each year until paid. On or about October 8, 1954, Kidder entered into a written agreement transferring his ranch and all of his cattle (180 head) to petitioner. It was part of the agreement of transfer that petitioner would pay the alimony judgment that had been awarded against Kidder. Kidder continued to conduct the Nebraska ranch operation and petitioner continued to live in Oklahoma. On June 21, 1955 the sheriff of Cherry County levied on 156 of the 180 head of cattle pursuant to a writ of execution initiated by Pearl to collect *329 past due alimony. Instead of having the cattle sold by the sheriff, they were, with proper consents, put up for sale through the Valentine Livestock Auction Company at its regular sale. On July 7, 1955, 45 cows and 45 calves were sold, and, in addition to the proceeds therefrom in the amount of $6,514.38, the petitioner gave the sheriff of Cherry County, Nebraska, a check in the amount of $2,019.08, whereupon the remaining 66 head of cattle were returned to Milton C. Kidder. From the amount of $8,533.46 ($6,514.38 plus $2,019.08) received by the sheriff of Cherry County, Nebraska, he paid the expenses incurred by the levy, seizure and sale and paid to the Clerk of the District Court of Cherry County, Nebraska, the balance of $7,195.60 to be applied in satisfaction of the judgment of Pearl L. Kidder. Petitioner did not suffer any net operating loss in 1955 by reason of the seizure of the livestock. Opinion Petitioner's counsel who represented her at the time of the filing of the petition moved to withdraw. His motion, showing notice to petitioner and respondent, was granted some eight months before trial. Although petitioner appeared pro se, she is hard of hearing and her *330 brother Milton C. Kidder was the only active participant in the proceedings in her behalf and the only witness in the case. We have difficulty stating the exact amount of the 1955 operating loss that is being claimed. No amount was alleged in the petition. From Kidder's rambling testimony it appears to be various amounts ranging from $6,000 to $14,000. Respondent on brief states the 1955 claimed operating loss is $6,706.50. At any rate, the only argument advanced with respect to a 1955 operating loss is that such loss resulted when 156 head of her cattle were seized by the sheriff and some sold in partial satisfaction of a judgment and the remainder "redeemed" by petitioner. There is no merit in the argument that this event resulted in an operating loss. The record indicates that in 1955 petitioner paid income tax of $16.40. This would indicate she had a small net income that year. In order to sustain her burden of showing that she sustained a net operating loss that year, petitioner would have to show she was entitled to a deduction from income that year which she did not take and which was in excess of her gross income. Section 172(c); § 1.172-3, Income Tax Regs.
*331 The value of the cattle seized by state court process, measured by the sale or redemption prices paid, would not constitute a business expense under section 162(a) or a loss deductible from gross income under section 165. In effect, the seizure and subjection of her assets in partial satisfaction of a personal judgment against her brother constitute a payment on the judgment. The only testimony we have is that she agreed to pay this judgment at the time she received the transfer of the ranch and cattle. Such a payment would not constitute a business expense deductible from gross income under section 162(a) or a loss deductible from gross income under section 165. The event may have curtailed the ranching operation but no deduction from 1955 income in the amount of the value or sale price of the seized property resulted from said seizure. In any event, petitioner wholly failed to support her burden of showing any 1955 net operating loss was not completely eliminated by the carry-back to 1953 and 1954, as well as the carry-forward to 1956 and 1957. Section 172(b). We hold for respondent on the issue presented. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩